UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES TYRELL DRANE,

      Petitioner,              Civil No. 2:20-CV-10114
                                  HONORABLE DENISE PAGE HOOD
v.                         UNITED STATES DISTRICT JUDGE

MIKE BROWN,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITIONS FOR WRIT OF
HABEAS CORPUS, GRANTING THE MOTION TO AMEND THE
PETITION, DENYING AS MOOT THE MOTION FOR RELEASE ON
PERSONAL RECOGNIZANCE OR SURETY, DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER
LEAVE TO APPEAL *IN FORMA PAUPERIS***

      James Tyrell Drane, ("Petitioner"), confined at the Kinross Correctional

Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for one count of

first-degree criminal sexual conduct committed during a felony, M.C.L.A.

750.520b(1)(c); and one count of third-degree criminal sexual conduct involving a

victim between the age of 13 and 15, M.C.L.A. 750.520d(1)(a).

      For the reasons that follow, the petitions for writ of habeas corpus are

**DENIED WITH PREJUDICE.**

# I. Background

In 2014, the Wayne County Prosecutor's Office charged Petitioner with two counts of first-degree criminal sexual conduct while committing a felony and one count of kidnapping. At the preliminary examination, B.B. [1] testified that Petitioner sexually assaulted her on August 7, 2008. B.B. was at a birthday party that day at a bar in Detroit when she stepped outside to call her then-boyfriend, who was taking care of her son. While she was outside, Petitioner, who was the father of the boy, arrived in his car and called out to B.B. B.B. got into the car to speak with Petitioner about their son. When other people began leaving the bar, Petitioner told her that he did not feel comfortable and asked to move the car, to which B.B. agreed. Petitioner moved the car to an alley, where Petitioner began making sexual comments toward B.B. and touching her. When B.B. tried to exit the car through the passenger door, it wouldn't open as the locking mechanism had been removed. Petitioner leaned over B.B., pulled a lever to recline the seat, and placed his arm over her neck. Petitioner then vaginally penetrated the victim both digitally and with his penis. Petitioner then took B.B. back to the bar. B.B. went to

---

[1] Because of the sensitive nature of the charges, as well as the fact that one of the victims was a minor at the time of the offenses, the Court will refer to the victims by their initials only to preserve their privacy. See Fed. R. Civ. P. 5.2(a).

the hospital that night and reported the rape to the police. (ECF No. 16-5, PageID. 253-64).

In 2015, after Petitioner's DNA matched a DNA sample entered into the Combined DNA Index System (CODIS), the prosecutor's office charged Petitioner with first-degree criminal sexual conduct while committing a felony, third degree CSC involving a victim 13 to 15 years old, and kidnapping. Before the preliminary examination in that case, the state district court granted the prosecution's request to dismiss the kidnapping charge because it was "time-barred." (ECF No. 16-16, PageID. 459-60). K.M. testified at the preliminary examination that on March 1, 1999, she was a 15-year-old high-school student walking to school. A man whom she did not know at the time but whom she identified at the preliminary examination as Petitioner pulled up in a car and asked if he could take her to school. After K.M. got into the car, Petitioner told her that "he had to make a quick stop" before taking her to school. Petitioner drove in the opposite direction of the school and took her to a "secluded area." Once there, Petitioner began making sexual remarks and touching K.M. K.M. said that she "didn't come here for that," but Petitioner struck her in the face. Petitioner forced K.M. to have oral and vaginal sex in the car. Petitioner then drove to a different location, where K.M. got out of the car. K.M. called the police and went to the hospital for a rape examination. She also provided a statement to the police, but the officers

themselves wrote out the statement. (*Id.,* PageID. 462-78). The prosecution presented a Michigan State Police lab report which showed that Petitioner's DNA matched the DNA profile found in a sample taken from the inside back of K.M.'s underwear. (*Id.*, PageID. 499-502).  The prosecution also moved to add an additional count of criminal sexual conduct, related to K.M.'s description of the forced oral sex, which the district court granted. (*Id.*, PageID. 502-05).

At the end of a motion hearing in August 2015, the prosecution first placed on the record a plea offer that combined the 2014 and 2015 cases. If Petitioner pleaded guilty to one count of first-degree criminal sexual conduct from the 2014 case and the third-degree criminal sexual conduct count from the 2015 case, then the prosecution would agree to recommend a sentence of 14 to 25 years in prison. Petitioner's counsel indicated that she had not yet communicated the plea offer to Petitioner, so the parties agreed to give him more time to consider it. (ECF No. 16-17, PageID. 526-28).

Two days later, Petitioner rejected the offer. The trial judge noted, and defense counsel repeated, that if Petitioner was convicted as charged after a trial, his guidelines minimum sentence range, as preliminarily calculated, was 14 years and three months to 23 years and nine months and that, under the current state of the law, the judge could exceed that range if she chose to.  The prosecutor also noted that the maximum sentence for the first-degree criminal sexual conduct

charge was life in prison.  The prosecution and the judge both noted that the potential deal was a "below guidelines offer." Petitioner, however, indicated he wanted to go to trial.  (ECF No. 16-18, PageID. 534-38).

The next day, Petitioner changed his mind and agreed to plead guilty. Petitioner pleaded guilty to one count of first-degree criminal sexual conduct which was committed during the commission of a felony and one count of third-degree criminal sexual conduct involving a victim between the age of 13 and 15. In exchange for the plea, the prosecutor agreed to dismiss the other charges.  The prosecutor also agreed that Petitioner's sentence on the first-degree criminal sexual conduct charge would be 14-25 years and that his sentence would be 10-15 years on the third-degree criminal sexual conduct charges, with the two sentences to run concurrently with one another. (ECF No. 16-19, PageID. 542-43).  Petitioner was advised of the maximum penalties of the crimes that he was pleading guilty to. Petitioner informed the judge that he had read, reviewed, and signed the advice of rights form. In response to the judge's questions, Petitioner acknowledged that he understood his trial rights and that he would be waiving these rights by pleading guilty. (*Id.*, PageID. 545-50). In response to the judge's question, Petitioner denied being coerced into pleading guilty. (*Id.*, PageID. 550). Petitioner made out a factual basis for the guilty plea. (*Id.*, PageID. 552-55).

Sentencing was scheduled for September 28, 2015. The prosecutor indicated that Petitioner appeared to deny his guilt in statements he made during the presentence investigation and asked the judge to get Petitioner to reaffirm that his plea was uncoerced. (ECF No. 16-20, PageID. 568-69). In a protracted colloquy, Petitioner evaded the judge's questions as to whether he believed he was actually guilty of the offenses which he pleaded to. Petitioner, however, emphasized that he was not coerced into pleading guilty, and he noted that he accepted the plea deal because he was "told that the evidence against [him] [wa]s stacked so high that [he] c[ouldn]'t win the trial" and that he "d[id]n't want to spend the rest of [his] life in jail." (*Id.*, PageID. 572-75). Later, when the judge suggested that she could "throw out the sentence agreement" because Petitioner refused to accept responsibility for his crimes, Petitioner indicated that he wanted to proceed with the plea deal and that he pleaded guilty because he was, in fact, guilty. (*Id.,* PageID. 593-94). The trial court sentenced Petitioner to concurrent terms of fourteen to twenty-five years in prison for the first-degree conviction and ten to fifteen years in prison for the third-degree conviction. (*Id.,* PageID. 594-96).

Petitioner's conviction was affirmed on appeal. *People v. Drane,* No. 334220 (Mich.Ct.App. Feb. 23, 2017); *lv. den.* 501 Mich. 864; 901 N.W.2d 104 (2017); *cert. den. Sub nom. Drane v. Michigan*, 139 S. Ct. 924 (2019).

6

Petitioner filed this petition for writ of habeas corpus, which was held in abeyance so that petitioner could return to the state courts to exhaust additional claims. *Drane v. Horton,* No. 2:20-CV-10114, 2020 WL 2196736 (E.D. Mich. May 6, 2020).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Drane,* No. 15-007208-1-FC (Wayne Cty. Cir. Ct., May 8, 2020)(ECF No. 16-23); *reconsideration den.* No. 15-007208-1-FC (Wayne Cty. Cir. Ct., June 23, 2020)(ECF No. 16-25).  The Michigan appellate courts denied Petitioner leave to appeal. *People v. Drane,* No. 355992 (Mich.Ct.App. Apr. 20, 2021); *lv. den.* 967 N.W.2d 635 (2022), *reconsideration den.* 509 Mich. 934, 971 N.W.2d 615 (2022).

This Court subsequently reopened the case and allowed Petitioner to file an amended petition.  The Court ordered Respondent to file an answer. (ECF No. 11). Respondent filed an answer to the original and amended petitions. (ECF No. 15). Petitioner filed a reply to the answer (ECF No. 19), a motion to amend the petition (ECF No. 20), and an amended habeas petition. (ECF No. 21).

Petitioner's original and two amended petitions list the claims in different order and with different wording. For the purposes of judicial clarity, the Court will consolidate and number the claims as follows: (1) there was a jurisdictional defect because several charges were barred by the state's statute of limitations, (2)

Petitioner's due process rights were violated by judicial participation in the plea negotiations, (3) the plea bargain was illusory, (4) Petitioner's due process rights were violated by him being entrapped, (5) ineffective assistance of trial counsel, (6) ineffective assistance of appellate counsel, (7) Petitioner's convictions should be set aside because he is actually innocent, (8) Petitioner's due process rights were violated when the prosecutor used DNA testing to revive the expired statute of limitations period.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III. Discussion

### A. The Motion to Amend the Petition is GRANTED.

Petitioner filed a second motion to amend the petition and a second amended habeas petition. In his second amended petition, Petitioner appears to clarify the

claims he is raising in his first amended petition and to bolster those claims with additional arguments.

The Court grants the motion to amend the habeas petition; the amended habeas petition supplements the claims raised in the original and first amended petitions. *See e.g. Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016).

**B. Claim # 1 and # 8. The statute of limitations claims.**

Petitioner initially brings several challenges to his guilty plea involving the applicability of Michigan's statute of limitations for charging a criminal defendant with a criminal offense.

Petitioner claims that the criminal sexual conduct charges from the 1999 case involving K.M. are barred by Michigan's statute of limitations.  Petitioner also claims that he could not be charged with first-degree criminal sexual conduct committed during a felony because the prosecutor acknowledged that the underlying felony in this case, kidnapping, was barred by the statute of limitations.

"A state court's failure to properly apply a state statute of limitations does not violate due process or any other provision of the Constitution or a federal statute, and thus does not provide a basis for granting a writ of habeas corpus." *Burns v. Lafler*, 328 F. Supp. 2d 711, 719 (E.D. Mich. 2004). Petitioner's claim that the Michigan statute of limitations had expired when he was charged with

these crimes is non-cognizable in a federal habeas corpus proceeding, because it raises solely an issue of state law. *Id*.

Petitioner's claim in any event is without merit. At the time that the offense was committed in 1999, M.C.L.A. 767.24(2) provided that "[I]f an alleged victim was under 18 years of age at the time of the commission of the offense, an indictment for an offense ... may be found and filed within 6 years after the commission of the offense or by the alleged victim's twenty-first birthday, whichever is later." *See People v. Russo*, 439 Mich. 584, 591, 487 N.W.2d 698, 700–01 (1992).  On May 2, 2001, M.C.L.A. 767.24 (1) was amended to indicate that a prosecution for first-degree criminal sexual conduct, "may be found and filed at any time." P.A.2001, No. 6. The law was also amended to indicate that in a prosecution for second or third-degree criminal sexual conduct "in which the victim is under 18 years of age," the charge may be "filed within 10 years after the offense is committed or by the alleged victim's twenty-first birthday, whichever is later." *Id.*  The statute also for the first time carved out an additional exception:

> If evidence of the offense is obtained and that evidence contains DNA that is determined to be from an unidentified individual, an indictment against that individual for the offense may be found and filed at any time after the offense is committed. However, after the individual is identified, the indictment may be found and filed within 10 years after the individual is identified or by the alleged victim's twenty-first birthday, whichever is later.
>
> *Id.*

11

The statute clarified that an "identified" individual "means the individual's legal name is known and he or she has been determined to be the source of the DNA." *Id.*

Given this statute, the limitations period did not expire until ten years after the date Petitioner was identified as the source of the DNA found on the inside back of the victim's underwear, which was in 2014 after his DNA was identified when it was run through CODIS. The limitations period had not yet expired when the prosecution brought the 2015 case involving K.M.

Petitioner further argues that the first-degree criminal sexual conduct charges in the 2015 case should have been dismissed because the ten year limitations period for the underlying kidnapping charge had run by the time he was charged in 2015.

The Michigan Court of Appeals has previously held that Michigan's felony-murder statute does not require that the defendant be charged and convicted of the underlying felony to sustain a felony-murder conviction. *See People v. Seals*, 285 Mich. App. 1, 16, 776 N.W.2d 314 (2009).  The post-conviction judge in this case rejected Petitioner's claim by relying on the holding in *Seal* to conclude that a conviction on the underlying felony is unnecessary to sustain a conviction for first-degree criminal sexual conduct during the commission of a felony. (ECF No. 16-23, PageID. 774).  Although not mentioned by the post-conviction judge in this

case, the Michigan Court of Appeals, in fact, has held that the expiration of the limitations period on an underlying felony does not preclude a conviction of first-degree criminal sexual conduct under a theory that the sexual assault occurred during the commission of another felony. *People v. Jackson*, No. 311557, 2014 WL 896996, at * 2 (Mich. Ct. App. Mar. 6, 2014).

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). This Court must therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes and possible defenses. *See e.g. Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). Because a conviction on the underlying felony is unnecessary to sustain a charge or conviction of first-degree criminal sexual conduct involving a sexual assault which took place during the commission of another felony, it was not improper to charge Petitioner with first-degree criminal sexual conduct in the 1999 case.

13

Petitioner is not entitled to habeas relief on his claims because his statute-of-limitations argument is without merit. *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001).

Petitioner also appears to argue that it was a violation of the *Ex Post Facto* Clause of the federal constitution to retroactively apply the revised statute of limitations statute to extend the limitations period.

The *Ex Post Facto* Clause of the United States Constitution may be violated if a statute of limitations for criminal prosecutions is extended after it had already expired against a particular criminal defendant. *See Stogner v. California,* 539 U.S. 607, 632-33 (2005).  However, the extension of a limitations period before that period has run does not violate the *Ex Post Facto* Clause. *See U.S. v. Knipp*, 963 F. 2d 839, 844 (6th Cir. 1992).  In the present case, the Michigan Legislature eliminated the six year statute of limitations for first-degree criminal sexual conduct prosecutions before the six year limitations period had expired on Petitioner's first-degree criminal sexual conduct charge.  Also, prior to the expiration of the statute of limitations, the Michigan Legislature also amended the statute of limitations to allow for a ten year limitations period for the offense of third-degree criminal sexual conduct involving persons under the age of 18 and to extend the limitations period for offenses where DNA has been obtained but the

offender not identified.  Petitioner is not entitled to relief because there was no *Ex Post Facto* violation.

Petitioner also claims that he did not have fair notice to defend himself against the original first-degree criminal sexual conduct charge in K.M.'s case because the underlying kidnapping charge was dismissed and the first-degree CSC charge only listed the underlying charge as "kidnapping" without citing a statute or listing the elements.

A state criminal defendant has a due process right to be informed of the nature of the accusations against him or her. *Lucas v. O'Dea,* 179 F. 3d 412, 417 (6th Cir. 1999).  Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948).  "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir. 1988).

An accused's constitutional right to notice of the criminal charge or charges brought against him or her can be satisfied by means other than an arraignment, such as a preliminary examination. See *Stevenson v. Scutt*, 531 F. App'x 576, 580

(6th Cir. 2013)(noting that victim's testimony from the preliminary examination provided petitioner with notice of the time frame of the assaults). The testimony from the preliminary examination clearly put Petitioner on notice as to the nature of the charges. Petitioner is not entitled to habeas relief on his first set of claims.

### C. Claim # 3. The judicial participation claim.

Petitioner next claims that he was coerced by the judge into pleading guilty and that her participation in the guilty plea proceedings violated his right to due process.

Petitioner has no federal constitutional right to withdraw his guilty plea. *See Hynes v. Birkett,* 526 F. App'x 515, 521 (6th Cir. 2013). Unless a petitioner's guilty plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas petitioner's plea is discretionary with the state trial court. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005). Moreover, "[i]t is well-settled that post-sentencing 'buyer's remorse' is not a valid basis" to set aside an otherwise valid guilty plea. *Meek v. Bergh*, 526 F. App'x 530, 536 (6th Cir. 2013)(internal quotations omitted).

A guilty plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004)(both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)). In order for a plea of guilty to be voluntarily and intelligently made,

16

the defendant must be aware of the "relevant circumstances and likely consequences" of his or her plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991).  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994).  When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness.  Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

Fed. R. Crim. P. 11 proscribes judicial participation in plea discussions, but it was adopted as a prophylactic measure and is not impelled by the Due Process Clause or any other federal constitutional requirement. *United States v. Davila,* 569 U.S. 597, 610-11 (2013).  Thus, although Fed. R. Crim. P. 11(e)(1) prohibits judicial participation in plea negotiations, it is not a federal constitutional rule; therefore, its prohibition on judicial participation in plea bargaining in the federal courts does not necessarily invalidate every instance of judicial participation in the negotiation of a guilty plea in state courts nor would it entitle Petitioner to habeas

relief. *Alvarez v. Straub,* 21 F. App'x 281, 283 (6th Cir. 2001)(quoting *Frank v. Blackburn,* 646 F. 2d 873, 880 (5th Cir. 1980)).

In the present case, the judge merely ascertained from the parties whether there had been a plea agreement. The judge further advised Petitioner of the rights he would be giving up by pleading guilty. The evidence in the record indicates that the trial court judge's remarks, on their face and in light of the surrounding environment in which they occurred, were not inherently coercive or prejudicial to Petitioner's rights, because there is no evidence which demonstrates that the trial court judge's remarks "were stern, overbearing or determined to intimidate" Petitioner into pleading guilty. *See Caudill v. Jago,* 747 F. 2d 1046, 1050-51 (6th Cir. 1984).

Petitioner, however, also claims that the judge coerced petitioner into pleading guilty by making implicit threats on the record at the pre-trial hearing on September 2, 2015 that she would impose a sentence at the high end of the sentencing guidelines range, or even exceed that guidelines range, if Petitioner was convicted after a trial.

As far as the judge's on the record admonition that Petitioner could be sentenced to the high end of the guidelines if convicted after a trial, or that the judge could even exceed the sentencing guidelines, this was not coercive, because the statement was accurate and the judge was simply advising Petitioner of the

consequences of going to trial. *See Oyague v. Artuz*, 274 F. Supp. 2d 251, 258

(E.D.N.Y. 2003).

In any event, Petitioner's claim that he was coerced into pleading guilty by

the judge, or anyone else for that matter, is defeated by the fact that Petitioner

stated on the record at the plea hearing that no threats or coercion had been made

to get him to plead guilty and that he was pleading freely and voluntarily. (ECF

No. 16-19, PageID. 550). Petitioner later reiterated at his sentencing that he had not

been coerced into pleading guilty. (ECF No. 16-20, PageID. 572-75).  Petitioner's

bare claim that he was coerced into pleading guilty is insufficient to overcome the

presumption of verity which attaches to Petitioner's statements during the plea

colloquy, in which he denied that any threats had been used to get him to enter his

plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750-51.

Finally, to the extent that Petitioner alleges that the judge's actions in

attempting to elicit a factual basis from him at the initial plea hearing on

September 3, 2015 or at the sentencing on September 28, 2015 to assure that

Petitioner's original plea was valid were coercive or improper, his claim is without

merit. A guilty plea is not coerced merely because a trial court judge attempts to

elicit a proper factual basis for the guilty plea from a defendant. *See e.g. United

States v. Gaither,* 245 F. 3d 1064, 1068-1069 (9th Cir. 2001).  Petitioner is not

entitled to relief on this claim.

19

### D. Claim # 4. The illusory plea claim.

Petitioner next contends that his guilty plea should have been set aside because the plea bargain was illusory because the charges that were dismissed were barred by Michigan's statute of limitations.

A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. United States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

Petitioner's plea agreement was not illusory. As mentioned when discussing Petitioner's first claim, *supra,* the original first-degree criminal sexual conduct charges filed in the 1999 case involving K.M. was not barred by the statute of limitations, nor was the third-degree criminal sexual conduct charge that Petitioner pleaded guilty to in that case. The prosecutor also agreed in the case involving B.B. to dismiss one of the first-degree criminal sexual conduct charges and the kidnapping charge. The prosecutor also agreed that Petitioner would receive a sentence of 14-25 years in prison on the first-degree criminal sexual conduct

20

charge that he did plead guilty to in that case, which was at the low end of the

sentencing guidelines range of 14 years to 23 years, nine months.[2]

This Court concludes that the plea agreement was not illusory because

Petitioner was promised the dismissal of charges and an agreement to be sentenced

at the low end of the sentencing guidelines, which therefore amounted to a real,

tangible benefit in consideration for the plea. *See Daniels v. Overton*, 845 F. Supp.

1170, 1174 (E.D. Mich. 1994).  Because Petitioner derived a real benefit from his

plea bargain in this case, his plea was not illusory and he is therefore not entitled to

habeas relief. *See McAdoo v. Elo,* 365 F. 3d 487, 498 (6th Cir. 2004).

### D. Claim # 5. The entrapment claim.

Petitioner next contends that the charges should have been dismissed

because he was entrapped.

Petitioner is not entitled to relief on his claim for several reasons.

First, it is well-established that entrapment is not a constitutional defense.

See *Hampton v. United States*, 425 U.S. 484, 488-91 (1976)(plurality opinion);

*United States v. Russell*, 411 U.S. 423, 430 (1973); *Sosa v. Jones*, 389 F. 3d 644,

648 (6th Cir. 2004); *United States v. Tucker*, 28 F 3d 1420, 1426-28 (6th Cir.

1994); *Rodriguez v. Jones,* 625 F. Supp. 2d 552, 566 (E.D. Mich. 2009); *Seeger v.*

---

[2] Michigan's Sentencing Guidelines, unlike the federal sentencing guidelines, only provide for a minimum sentence; the maximum is determined by statute. *See, e.g., Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010).

*Straub*, 29 F. Supp. 2d 385, 390-91 (E.D. Mich. 1998).  Because entrapment is not a constitutional defense, it cannot form the basis for habeas relief. *Sosa*, 389 F. 3d at 647-48; *Rodriguez,*, 625 F. Supp. 2d at 566; *Seeger*, 29 F. Supp. 2d at 390-91; *See also Lothridge v. U.S.*, 441 F.2d 919, 922 (6th Cir. 1971)(issue of entrapment could not be raised on collateral attack in a motion to vacate judgment and sentence brought pursuant to 28 U.S.C. § 2255 since there was no issue of constitutional dimensions presented).  Accordingly, Petitioner's claim that the state court's denial of his entrapment defense was clearly erroneous under Michigan law is not cognizable in a federal habeas corpus petition. *Seeger v. Straub,* 29 F. Supp. 2d at 390-91.

Secondly, Petitioner's allegations do not even make out a claim of entrapment. Petitioner alleges that he was entrapped by the prosecutor into pleading guilty when the police manufactured a new police report to support a higher charge of first-degree criminal sexual conduct, thereby forcing him to plead guilty to the lesser third-degree criminal sexual conduct charge. Petitioner claims that the victims in these cases were willing participants who consented to have sex with him.

Entrapment occurs when "the result of the governmental activity is to 'implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission . . . .'" *Hampton v. United States*, 425 U.S. at

490 (quoting *Sorrells v. United States*, 287 U.S. 435, 442 (1932)).  Michigan has

adopted the objective theory of entrapment. *See People v. Juillet*, 439 Mich. 34,

52-54; 475 N.W.2d 786 (1991).  Under an objective theory of entrapment,

"[e]ntrapment occurs when the government induces or instigates the commission

of a crime by one not ready and willing to commit it, rather than merely providing

the opportunity to commit a crime." *See Sosa v. Jones,* 389 F. 3d at 647(citing

*United States v. Russell*, 411 U.S. at 445).  In Michigan, the defense of entrapment

is decided by the judge, not the jury. *See People v. D'Angelo*, 401 Mich. 167, 173-

76, 257 N.W.2d 655 (1977), Entrapment is an affirmative defense that seeks to

excuse the crime.

Petitioner does not seek to excuse committing the crimes here, but that the

victims engaged in consensual sexual intercourse. Instead, he argues that he did not

commit any crime and that the police and prosecutor fabricated the charges.

Petitioner failed to show that he was entrapped.  Petitioner is not entitled to relief

on his fifth claim.

**E.  Claims # 6 and # 7. The ineffective assistance of counsel claims.**

Petitioner next contends he was denied the effective assistance of trial and

appellate counsel.

A defendant must satisfy a two prong test to establish the denial of the

effective assistance of counsel.  First, the defendant must show that, considering all

of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner first contends that trial counsel was ineffective for failing to obtain an expert witness to challenge the DNA evidence in the case involving K.M.

A habeas petitioner's claim that trial counsel was ineffective for failing to call or consult with an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006).  Petitioner has offered no evidence to this Court that there is an expert who would have invalidated the DNA evidence in this case. Petitioner is thus not entitled to relief on this claim.

24

Petitioner next claims that trial counsel was ineffective for failing to move for the charges involving K.M. to be dismissed on statute of limitations grounds. As mentioned, *supra,* the charges arising out of the 1999 case were not barred by Michigan's statute of limitations.  Trial counsel was not ineffective for failing to raise a meritless statute of limitations defense nor was appellate counsel ineffective for failing to raise the statute of limitations issue on Petitioner's direct appeal. *See Monzo v. Edwards*, 281 F.3d 568, 580–81 (6th Cir. 2002).

Petitioner next contends that trial counsel was ineffective for failing to object at the preliminary examination to the cases being bound over for trial.  Both victims testified at their respective preliminary examinations that Petitioner had sexually assaulted them without their consent and that he did so during the commission of another felony, to wit, a kidnapping. K.M. also testified that she was fifteen years old at the time of the offense. The victims' testimony established the elements of the various offenses. Petitioner is therefore unable to show that the two cases would not have been bound over for trial had his counsel objected. Because Petitioner has not established that he was prejudiced by trial counsel's failure to object to his bind over, his ineffective assistance of counsel claim is without merit. *See Dell v. Straub*, 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002).

Petitioner next contends that trial counsel was ineffective for failing to object to the judge's participation the plea negotiation process.  As mentioned

when discussing Petitioner's judicial coercion claim, *supra,* the judge's comments during the pre-trial conference where the plea offer was made, the actual plea hearing, and at sentencing, were not improper. Because the judge's participation in the plea negotiation process was not improper, trial counsel was not ineffective for failing to object. *See Carter v. Superintendent Coal Twp. SCI*, 739 F. App'x 739, 742 (3d Cir. 2018).

Petitioner next contends that trial counsel should have objected to the plea bargain for being illusory.  This Court already determined that the plea was not illusory.  Because the plea bargain was not illusory, counsel was not ineffective for advising Petitioner to accept it. *See Doughty v. Grayson*, 397 F. Supp. 2d 867, 882–83 (E.D. Mich. 2005).

Petitioner next contends that trial counsel was ineffective for failing to raise an entrapment defense.  As mentioned above, Petitioner's allegations do not make out an entrapment defense. Petitioner failed to show that counsel was ineffective in failing to present an entrapment defense, because he has offered no evidence to support that he was entrapped into committing these crimes. *See Mayes v. United States*, 93 F. Supp. 2d 882, 891 (E.D. Tenn. 2000).

Petitioner lastly claims that appellate counsel was ineffective for failing to raise several of his claims on his direct appeal.

26

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005).  Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016)(per curiam).

Petitioner's claims related to trial counsel's alleged ineffectiveness are meritless, as well as the other claims raised in his petition. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).   Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

### F.  Claim # 8. The actual innocence claim

Petitioner lastly claims that he is entitled to habeas relief because he is actually innocent of the charges.

To the extent that Petitioner seeks habeas relief based on his actual innocence, he would not be entitled to the issuance of a writ.  In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").  Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases).

To the extent that Petitioner contends that he should be permitted to withdraw his guilty plea because he is actually innocent of the crimes, he is also not entitled to relief.

A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  Bald assertions of innocence are insufficient to permit a defendant to withdraw his or her guilty plea. *United States v. Jones*, 336 F. 3d 245,

252 (3rd Cir. 2003). "Assertions of innocence must be buttressed by facts in the

record that support a claimed defense." *Id.* (internal quotation omitted). The mere

assertion of innocence, absent a substantial supporting record, is insufficient to

overturn a guilty plea, even on direct appeal. *See Everard v. United States*, 102 F.

3d 763, 766 (6th Cir. 1996). Petitioner's mere recantation of his guilty plea,

without any support, would therefore be insufficient to have his plea overturned.

*Id.* A defendant's belated claim of innocence without more is insufficient to justify

withdrawal of a guilty plea. *See United States v. Gregory*, 41 F. App'x 785, 792

(6th Cir. 2002).

Petitioner has presented no credible evidence to this Court that he is actually

innocent of the crimes. A federal habeas court reviewing a belated claim of

innocence which contradicts a prior, valid guilty plea must draw all permissible

inferences in favor of the prosecution and against the petitioner. *See Ferrer v.*

*Superintendent*, 628 F. Supp. 2d 294, 308 (N.D.N.Y. 2008)*; See also Garrison v.*

*Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001)(petitioner's "admissions of

factual guilt are entitled to great weight"). Petitioner clearly made out a factual

basis for the charges at the plea hearing. Petitioner later reaffirmed his plea when

questioned by the judge at sentencing. Petitioner is not entitled to withdraw his

guilty plea on his claim of innocence, in light of the fact that Petitioner stated

under oath at his guilty plea hearing that he was guilty of participating in the

crimes for which he was convicted. *See U.S. v. Young,* 310 F. App'x 784, 793 (6th Cir. 2009).

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus with prejudice.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484. However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous;

therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that:

(1) The Motion for Leave to Amend Petition for Writ of Habeas Corpus (ECF No. 20) is **GRANTED.**

(2) The petitions for a writ of habeas corpus (ECF Nos. 1, 10, 21) are **DENIED WITH PREJUDICE.**

(3) The Motion for Release on Personal Recognizance or Surety (ECF No. 22) is **DENIED as MOOT**, in light of the ruling declining to issue the writ in this case.

(4) A certificate of appealability is **DENIED.**

(5) Petitioner will be granted leave to appeal *in forma pauperis.*

                          s/Denise Page Hood
                          HON. DENISE PAGE HOOD
Dated:  January 23, 2024      UNITED STATES DISTRICT JUDGE